# UNITED STATES
*vs.*
# THE SCHOONER HAMPTON.

1. Where a vessel has been captured *jure belli* and not under the non-intercourse acts of Congress, and the vessel and cargo have been libelled as enemy property simply, and in that character condemned, the case does not come under the provisions of the act of Congress intended to protect liens which might be established in the case of a seizure where one-half of the property seized goes to the informer, and the other half to the United States.
2. The act of Congress of March 3, 1863, providing for the protection of certain liens is incomprehensible and therefore incapable of enforcement by the Court.

No. 67, Old Docket. In Admiralty. Special Term. Decided March 7, 1864.

IN PRIZE.

MR. E. C. CARRINGTON, for petitioners.

MESSRS. BEALE and Cox, for claimants.

MR. JUSTICE WYLIE delivered the opinion of the Court:

On the 13th of January, 1863, the Schooner Hampton, of Deal's Island, was captured in Dividing Creek, Va., by the U. S. Steamer Currituck, attached to the Potomac flotilla.

The schooner and cargo were libelled, and have been condemned as enemy property in this Court.

At the time of her capture the schooner was under mortgage to Jos. B. Brinkley, of Baltimore, to secure a note for $823. dated 13th December, 1862, given by William T. Rowe, the owner, for balance of purchase money on the vessel due the said Brinkley, and for cash advanced for repairs, and for merchandise sold and delivered by Brinkley to the said Rowe.

The mortgage was duly recorded at the Custom House at Deal's Island, on the 22d December, 1862.

Brinkley has intervened in the case, claiming that he had a right to payment out of the proceeds of the vessel, by virtue of the Act of Congress of 3d March, 1863, ch. 90.

Brinkley's petition merely states the amount and character of his claim, but is entirely silent as to his loyalty, and as to any knowledge of participation on his part in the illegal use of the vessel.

On the 9th of September, 1863, on motion of the proctor for the claimant, an order was made that the cause be referred to a commissioner to examine the claim of the petitioner. Under this reference the claimant proved the execution of the note and the consideration thereof, viz.: "That the said note was given for the balance of purchase money of the schooner Hampton, and also for cash advanced for repairs, and for merchandise sold to the said Rowe."

The witness, and the only witness, who was called before the commissioner, was John J. Stewart, a clerk of the claimant. The witness proved also that the claimant was a grocer and commission merchant in Baltimore, and a loyal citizen of the United States, to the best of the witness' knowledge and belief.

The schooner sailed from Baltimore on the 9th of January, 1863, on her illegal voyage and without a permit or manifest. There is no positive evidence to show that the claimant had knowledge of or participated in the unlawful venture; but the circumstances are sufficient to raise a strong presumption that he both knew of and did participate in the same. He makes no claim to being a loyal citizen in his own affidavit; nor does he deny his knowledge of or participation in the illegal use of the vessel.

The only witness produced by him has not a word to say on any of these points, except that he makes a feeble endorsement of the claimant's loyalty, "to the best of his knowledge and belief." Nor does he tell how much of the amount due in the note was for repairs to the vessel, nor how much for

the merchandise, nor how much for the balance of purchase money.

On all these points, the Court had a right to be fully informed, and it was evidently within the power of the claimant to supply the information.

The act of Congress above referred to was passed with a view to protect specific liens, held by loyal citizens of the United States, or by citizens of foreign nations, in amity with the United States, against vessels which might be seized whilst engaged in violating the non-intercourse acts. But the act at the same time contains the following proviso: "That no such claim shall be allowed in any case where the claimant shall have knowingly participated in the illegal use of such ship, vessel or other property."

Another objection to the admission of this claim arises upon the face of the statute itself. The capture in this case was made *jure belli*, and not under the non-intercourse acts of Congress; and the vessel and cargo have been libelled as enemy property simply, and in that character alone have they been condemned. The liens intended to be protected were those which might be established in the case of seizures under the acts of Congress, where one half the proceeds belong to the informer, and the other half to the United States.

The present case was that of a capture *jure belli* and not a seizure under municipal law, and one-half the proceeds go to the captors instead of to an informer.

And although it cannot be doubted that an information under the acts of Congress forbidding intercourse with the enemy might have been brought in the present case at the instance of an informer, yet that remedy was not intended to oust the rights of captors *jure belli* to the vessel and cargo as prize of war. War exists between the United States and the States engaged in the Rebellion and the rights of war under the law of nations are, therefore, paramount to those which spring from the merely municipal regulations on

the part of either of the belligerents.    See case of the Sally, 8th Cranch, 382.

Besides, still another objection to the allowance of the present claim arises from the fact that the act of Congress of 1863, on which it depends appears to be incapable of being enforced in courts of justice in consequence of the change of its title, which was made on the final passage of the bill.

As the bill was reported the title contained a reference to the act of 13th July, 1861, ch. 3, and the act of August 6th, 1861, ch. 60.   The body of the act refers to "proceeding by virtue of the acts above mentioned, or of any other laws on that subject," and provides a remedy for lien creditors in the mode already explained.

But on the final passage the title was changed so as to contain no reference whatever to any of the acts of Congress; and thus in itself the act was made to be perfectly incomprehensible, and therefore incapable of being carried into execution.

The editor of the statutes it is true has given us an explanation of the subject in a foot note to the act of his own preparation, and doubtless his explanation is historically correct; but the Court cannot establish a precedent which would authorize the obscurity of an act of Congress to be removed by a marginal note inserted by the publisher of the laws.

For these reasons the claim of J. B. Brinkley is not allowed.